RECEIVED
JUL 0 5 2023
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

IN THE UNITED STATED DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

TELLY SEBASTIAN WILLIAMS,

  Plaintiff

v.

GC SERVICES LIMITED PARTNERSHIP,

  Defendant

CIVIL ACTION NO. EP-23-CV-00205-FM

### PLAINTIFF'S SECOND AMENDED PETITION FOR DAMAGES BASED ON VIOLATION OF THE CIVIL RIGHTS ACT OF 1964, PUBLIC LAW 88-352, AND THE FAIR LABOR STANDARDS ACT OF 1938

**TO THE HONORABLE JUDGE OF THE COURT:**

Plaintiff files this second amended original petition in lieu of his original and first amended petitions, which were filed on March 24th, 2023, and May 9th, 2023, respectively.

Plaintiff, Telly S. Williams, Pro Se, complaining of Defendant, GC Services Limited Partnership, a domestic corporation and resident of El Paso County, Texas, respectfully shows the following:

### I. DISCOVERY

Discovery in this case is intended to be conducted under Discovery Control Plan Level 2, and under the provisions of the Texas Rules of Civil Procedure 190.3(a). Plaintiff moves the court to order that discovery be conducted in accordance with a discovery control plan tailored to the circumstances of this suit.

### II. PARTIES

1. Plaintiff: Telly S. Williams, a single person, residing at 10113 Newcastle Drive, El Paso, TX, 79924 (El Paso County).

2. Defendant: GC Services Limited Partnership, upon information and belief, a private corporation duly incorporated under the laws of the State of Texas with its principal place of business in the State of Texas, residing at 1323 Lee Trevino Drive, Suite 100, El Paso, TX, 79936 (El Paso County)[1].

### III. JURISDICTION AND VENUE

This case is filed in the district of the Defendant's place of business.

The subject matter is within the jurisdiction of this court.

All parties are subject to this court's personal jurisdiction.

### CAUSES OF ACTION

### IV. ACCUSATION OF FRAUDULENTLY MANIPULATING WORKING HOURS

On May 2, 2022, Ms. Sara Orrantia ("Trainer"), a Trainer at the Defendant's call center, accused the Plaintiff of fraudulently documenting working hours through the GC Services computer servers, but was unable to provide any evidence as proof.

### V. DISCIPLINARY ACTION FOR TAKING A LEGITIMATE BATHROOM BREAK

On May 3, 2022, after the Plaintiff returned from a restroom break, the Trainer singled the Plaintiff out and verbally reprimanded him about being disrespectful for using the bathroom without her consent, even though Plaintiff's action had been no different than any other trainees and the Trainer had no reason to give Plaintiff a verbal reprimand other than to target him in a discriminatory manner.

### VI. RETALIATORY ACTION BY THE DEFENDANT

Upon reporting this issue to the Defendant, the Plaintiff was punished and placed on "administrative leave" without Plaintiff knowing whether or not a full investigation of the incidents was performed and without the Plaintiff being involved in the investigatory process other than providing an initial verbal and written response to the incidents.

### DISCRIMINATION AND RETALIATORY ACTION AGAINST THE PLAINTIFF

---

[1] Headquartered at 6330 Gulfton Street, Houston, TX 77081 ((800) 756-6524)

## VII. RACIAL DISCRIMINATION

The issues stated in this complaint began when the Defendant's Trainer unfairly targeted Plaintiff for adverse action. The Trainer did this by accusing Plaintiff of fraudulently documenting his hours without having any proof, and then by unfairly reprimanding Plaintiff for using the bathroom outside of company policy.[2] Defendant states, "with regard to this training program, trainees are allotted (2) fifteen minute breaks and (1) thirty minute lunch break[3], but the Defendant should show that the Trainer was following this policy and that Plaintiff violated the policy. In fact, the Trainer routinely ignored the policy that the Defendant stated was in place at the time of Plaintiff's employment.

4) Plaintiff was the only African-American in the training class and no other employees had been accused of fraudulently documenting their working hours and no other employees had been reprimanded for taking a bathroom break, even though we had all been taking bathroom breaks in the same manner throughout the training.

Section 703(a)(2) of the Civil Rights Act of 1964 states, "it shall be an unlawful employment practice for an employer to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin".

To establish prima facie case of discrimination under Title VII, employee must show she (1) is a member of a protected class, (2) was qualified for her position, (3) was subjected to an adverse employment action, and (4) was treated differently from similarly situated employees outside her protected class. (*See* Garza v. North East Independent School Dist., 415 Fed.Appx. 520).

My race is African-American and the Defendant's Trainer targeted me because of my race. It wasn't based on my gender or sex because no other males were treated similarly. It wasn't age discrimination because a trainee named Norma (aged 47) didn't have this same issue with the Trainer.[4] It wasn't based on the Plaintiff's religion because, to the best of Plaintiff's knowledge, the Trainer didn't know what his religion was. The Plaintiff was, however, the only Black American in the training class. His performance

---

[2]See Exhibit A, GC Services' response to the EEOC charge of discrimination. The burden of proof is on the Defendant to show that Plaintiff violated the Defendant's break policy.
[3]Ibid.
[4]She had recently been given a good performance award.

was excellent, as can be seen both academically and through client interactions on the phone. He had around a 90% average on his exams, a 100% attendance rate, was within tardy-compliance policies, and had no other disciplinary issues on file.

Plaintiff was qualified for the position since the Defendant hired him for the position, gave no indication that Plaintiff wasn't qualified for the position, and the Plaintiff wasn't in the process of being removed from the position for lack of qualification.

Adverse employment action was taken against Plaintiff when the Defendant placed him on "administrative leave," a form of punishment, as a result of his making a complaint about the Trainer discriminatorily targeting him. Plaintiff was asked not to return to his place of employment until the investigation was completed.

No other trainees were treated in a similar manner by the Trainer and Plaintiff was unfairly targeted by the Trainer because of his race.

Title VII of the 1964 Civil Rights Act is to be accorded a liberal construction in order to carry out the purposes of Congress to eliminate the inconvenience, unfairness and humiliation of racial discrimination (Civil Rights Act of 1964, §701; *See* Quijano v. University Federal Credit Union, 617 F.2d 129). Unfair employment practices provisions of the Civil Rights Act of 1964 should be accorded a liberal interpretation in order to effectuate the purpose of Congress to eliminate the inconvenience, unfairness, and humiliation of ethnic discrimination (Civil Rights Act of 1964, §701-716(c), §706(a); *See* 42 U.S.C.A. §2000e-15, 2000e-5(a); *See* Rogers v. E.E.O.C., 454 F.2d 234).

## VIII. RETALIATION

After the discriminatory incidents were reported by Plaintiff, the Defendant retaliated against him by placing him on "administrative leave," a form of punishment, even though Plaintiff was the victim in this case. After both the Trainer and Plaintiff had written their initial statements about the incident, the Defendant told Plaintiff that he was to go home while an investigation was undertaken into the incidents and that the Plaintiff shouldn't return to the workplace until he was informed otherwise. To the best of Plaintiff's knowledge, information, and belief, the Trainer was not treated in a similar fashion.

Section 15(a)(3) of the Fair Labor Standards Act of 1938 ("FLSA") states that it is a violation for any person to "discharge or in any other manner discriminate against any employee because such employee

has filed any complaint or instituted or caused to be instituted any proceeding under or related to this act, or has testified or is about to testify in any such proceeding..." Employees are protected regardless of whether the complaint is made orally or in writing. Because §15(a)(3) of the FLSA prohibits "any person" from retaliating against "any employee", the protection applies to all employees of an employer even in those instances in which the employee's work and the employer are not covered by the FLSA.

"Employees who have filed complaints or provided information cannot be discriminated against or discharged on account of such activity. If adverse action is taken against an employee for engaging in protected activity, the affected employee or the Secretary of Labor may file suit for relief, including reinstatement to his/her job, payment of lost wages, and damages."[5]

Title VII prohibits employers from taking adverse employment actions against employees on the basis of race, and also prohibits adverse actions taken in retaliation for having engaged in protected activity such as complaining about race discrimination (Civil Rights Act of 1964, §701 et seq.; *See* 42 U.S.C.A. §2000e et seq.; *See* Fullen v. Galveston Independent School Dist., 564 F.Supp.2d 719).

The victim ("Plaintiff") was placed on "administrative leave" and sent home without further pay for making a complaint about being reprimanded against in a racially discriminatory manner. When Plaintiff put in his complaint he was never under the assumption that he would be sent home for making such a complaint. The Defendant didn't even have time to read the statements before Plaintiff was sent home, so what criteria was used to punish the Plaintiff? Plaintiff was entitled to a proper investigation and resolution of the issue he brought forward instead of his being disciplined for making a complaint to the Defendant and being placed on "administrative leave." The Defendant's actions towards the Plaintiff decrease the odds that other employees who experience any form of discrimination at the Defendant's workplace will come forward with a complaint, nullifying the intended effects of both the Civil Rights Act of 1964 and the FLSA.

"Retaliation occurs when an employer (through a manager, supervisor, administrator or directly) fires an employee or takes any other type of adverse action against an employee for engaging in protected activity...An adverse action is an action which would dissuade a reasonable employee from raising a concern about a possible violation or engaging in other related protected activity. Retaliation can have

---

[5] U.S. Department Of Labor 2023, *Handy Reference Guide to the Fair Labor Standards Act*, accessed June 29, 2023, <https://www.dol.gov/agencies/whd/compliance-assistance/handy-reference-guide-flsa>.

a negative impact on overall employee morale."[6]

## IX. HANDLING OF THE INVESTIGATION AND LACK OF PLAINTIFF'S INCLUSION

If an investigation was in fact undertaken, as stated in the Defendant's EEOC ("Equal Employment Opportunity Commission") charge response, then why wasn't Plaintiff involved throughout the process other than his initial oral and written statements? Plaintiff was never asked to come in for further questioning, never given the opportunity to present witnesses on his behalf, nor given the opportunity to offer a rebuttal to any of the Trainer's accusations. Management for the Defendant took the side of the Trainer immediately. Defendant's management took Plaintiff's statement but judged the situation in the Trainer's favor without asking Plaintiff for further clarification, didn't treat both the Trainer and Plaintiff consistently throughout the investigation process, didn't regularly check in with Plaintiff regularly throughout the investigation, nor follow up with Plaintiff in order to make sure that he understood what was occurring in the investigation.

Other than the initial oral and written statements that Plaintiff made, Defendant's management ignored him completely throughout the investigation process and decided independently, without further consultation or a proper investigation, that Plaintiff was at fault. Despite stating that Plaintiff shouldn't return to work until the investigation was complete, the Defendant never contacted him to get further information or to inform him of the results of said investigation. The Defendant then took advantage of the Plaintiff waiting for contact from Defendant's management to quietly remove Plaintiff from his position and citing "job abandonment" as the cause.[7]

What adverse action was taken against the Trainer? If none was taken, then why was Plaintiff the only one punished? How did the Defendant know that Plaintiff was the one in the wrong while the Trainer was able to keep her position throughout the investigation?

The Defendant has stated that "HR Manager Ms. Vincent called Charging Party to inform him that the investigation was complete [on May 5, 2023] and to provide him further instruction regarding the status of his employment." Two days after Plaintiff was placed on "administrative leave", why did the Defendant complete their entire investigation without allowing Plaintiff to present a defense or to call

---

[6] U.S. Department Of Labor 2023, *Retaliation*, accessed June 29, 2023, <https://www.dol.gov/agencies/whd/retaliation>.
[7] See exhibit A, GC Services' response to the EEOC charge of discrimination.

witnesses on his behalf? What proof does the Defendant have that Plaintiff received said voice message from Ms. Vincent? Why was Plaintiff only entitled to one phone call, ultimately in the form of a voice message, instead of several phone calls in order to make sure that he was communicated with throughout the investigatory process? Furthermore, what, in fact, *was* the status of Plaintiff's employment at GC Services? Was he terminated? *If* so, wouldn't it have been proper to inform Plaintiff of that status and the reasons for that decision? Was it because the Defendant found proof that Plaintiff was in the wrong in this situation or was it because of retaliation for making a complaint in the first place?

## X. EEOC'S RIGHT TO SUE APPROVAL

The EEOC began and completed their investigation of this case and has authorized and given the Plaintiff a right to sue (Charge Number 453-2022-00827). The original petition was filed within the time limitations required for the EEOC charge.[8]

## XI. PLAINTIFF'S DAMAGES

On and prior to May 3, 2022, GC Services acted with gross indifference and conscious disregard to the rights, safety, and welfare of a person who might be affected by both the Defendant's own, and their employee's, conduct, thereby causing the Plaintiff injury. The result of those actions led to financial hardship, contributing to the following injuries, listed here and which are not exhaustive: embarrassment, mental anguish, anxiety, stress, sleep deprivation, impaired personal relationships, diminished mental health, and trouble engaging in normal daily tasks.

Each of the above and foregoing acts constituted discrimination and retaliation, in violation of the Civil Rights Act of 1964 and the Fair Labor Standards Act of 1938, and are a proximate cause of the incidents made the basis of this suit and the Plaintiff's injuries and damages.

## XII. MONETARY RELIEF

For such acts, Plaintiff seeks exemplary and compensatory damages in accordance with Chapter 41 of the Texas Civil Practice and Remedies Code. These damages are intended to not only make the

---

[8] EEOC Right To Sue signed on January 9, 2023, by Travis M. Nicholson, District Director. Original petition filed and stamped on March 24, 2023.

Plaintiff whole, but also to ensure that others are not subjected to this same treatment. Damages sought are within the jurisdictional limits of the court, with monetary relief over $200,000 but not more than $1,000,000.

## XIII. JURY DEMAND

Plaintiff respectfully requests that a jury be empanelled to decide the factual issues of this case.

THEREFORE, Plaintiff respectfully prays that Defendant be cited to appear, and that on final trial Plaintiff have judgment against Defendant for a sum within the jurisdictional limits of the Court, together with prejudgment and post judgment interest as provided by law, costs of court, and such other and further relief to which the Plaintiff is justly entitled.

Respectfully submitted,

*/s/ Telly Williams*

Telly S. Williams
10113 Newcastle Drive, El Paso, TX 79924
Phone: (915) 549-1401
Email: tw02gen@protonmail.com

## UNSWORN DECLARATION UNDER
## §132.001 OF THE TEXAS CIVIL PRACTICE AND REMEDIES CODE

My name is Telly Sebastian Williams, my date of birth is October 16, 1978, and my address is 10113 Newcastle Drive, El Paso, Texas, 79924, United States. I declare under penalty of perjury that the foregoing is true and correct.

Executed in El Paso County, State of Texas, on July 5, 2023.

*/s/ Telly Williams*

DECLARANT

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above was served via electronic mail on Jessica G. Mason on July 5, 2023, in accordance with the Texas Rules of Civil Procedure.

*/s/ Telly Williams*

DECLARANT

# XIV. BEGIN EXHIBITS

# Exhibit A



GC Services

U.S Equal Employment Opportunity Commission　　　　　　　　**VIA EMAIL**
El Paso Area Office
100 N. Stanton Street, Suite 600
El Paso, Texas 79901

December 14, 2022

Re: Notice of Charge of Discrimination – Telly S. Williams (Charge No. 453-2022-00827)

This letter constitutes the Statement of Position for Respondent, GC Services Limited Partnership ("GC Services" or "Company"), to the Charge of Discrimination filed by Charging Party, Telly S. Williams. We provide this information solely for the investigation of the Charge, and it is provided without waiving or compromising any defenses the Company may have in fact or in law. Please note that this statement reflects the understanding of the Company at this point in time, and may be subject to modification upon further investigation.

GC Services is an equal opportunity employer that treats its employees without regard to race, color, religion, creed, national origin or ancestry, sex, sexual orientation, gender identity, age, physical or mental disability, veteran status, genetic information or any other protected class characteristic under federal, state, or local law, including its decisions with respect to Charging Party. The following is GC Services' response to the Charge.

I.　　**CHARGE OF DISCRIMINATION**

Charging Party alleges he was discriminated against based on the Title VII of the Civil Rights Act of 1964 (Title VII). The circumstances of the alleged discrimination are based on Race and Harassment that are alleged to have occurred on or about May 2nd and 3rd of 2022. Charging Party claims GC Services terminated his employment based on race on or about May 3, 2022.

- Charging Party was allegedly accused of altering his working hours for the period of April 4, 2022 thru May 1, 2022.

- Charging Party was allegedly harassed for taking a bathroom break on or about May 3, 2022.

- Charging Party was allegedly asked to leave place of employment and has not been asked to return. Charging Party alleges he was terminated based on his race on or about May 3, 2022.

Charging Party's allegations are further addressed below.

# Exhibit A

EEOC Charge No. 453-2022-00827

## II. RESPONSE TO CHARGE

All employees are required to review and approve their timesheets and hours prior to a supervisor processing payroll. If an adjustment to working hours is required, an adjustment will be submitted to payroll for processing. There are no adjustments on file for Charging Party for the time frame referenced.

On May 3, 2022, Charging Party reported an incident involving him and collection trainer, Ms. Orrantia, to both an HR and Operations Manager. Details surrounding this incident involved Charging Party walking out of the training class room during commentary. Upon return, Charging Party was asked by Ms. Orrantia to inform her of the need to step out of the training room moving forward due to the level of complexity of the training material to be reviewed for the day. According to Charging Party's statement given to HR, he expressed frustration with this request. Charging Party was asked by Ms. Orrantia to step outside the classroom to discuss this matter and his frustration. During the one on one discussion with Ms. Orrantia, the verbal discussion escalated and Charging Party was asked to report to HR.

With regard to this training program, trainees are allotted (2) fifteen minute breaks and (1) thirty minute lunch break. We do not show evidence of Charging Party requesting any accommodation that would require him from deviating from the normal break schedule allotted during this training program.

When meeting with HR, Charging Party was provided the opportunity to complete an employee statement regarding the incident. Upon the reporting of this incident, HR Manager Ms. Vincent, she informed Charging Party that she would conduct an investigation regarding the incident reported by both Charging Party and collection trainer Ms. Orrantia. Charging Party was informed of his employment status and that he was being placed on administrative leave until further notification. HR Manager Ms. Vincent informed Charging Party that he should not report to work on May 4, 2022 until she called with a return to work date.

On May 5, 2022, HR Manager Ms. Vincent called Charging Party to inform him that the investigation was complete and to provide him further instruction regarding the status of his employment. Charging Party did not answer the call and a message was left requesting Charging Party to return her phone call. There is no record of Charging Party returning HR Manager Ms. Vincent's call nor is there record of him contacting anyone of GC Services' management or HR support members.

Charging Party's conduct involved in the above referenced incident is not related in any way to his termination. Charging Party was terminated solely due to job abandonment on May 9, 2022.

Given the preceding information, Charging Party's allegation is without merit. GC Services denies Charging Party was subjected to discrimination, harassment, or any other prohibited activity.

# Exhibit A

EEOC Charge No. 453-2022-00827

III. **CONCLUSION**

Charging Party was not subjected to discrimination or harassment based on his race or any other personal characteristic. His Charge lacks merit both in law and fact. Accordingly, GC Services respectfully requests that, absent withdrawal of the Charge, the El Paso Field Office of the U.S. Equal Employment Opportunity Commission to issue a "No Probable Cause" finding in this matter.

Sincerely,

Elaine Robledo
Compliance & Law Manager
GC Services Limited Partnership