UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **TELLY SEBASTIAN WILLIAMS**, | § | |
| | § | |
| *Plaintiff*, | § | |
| **v.** | § | **EP-23-CV-00205-FM-MAT** |
| | § | |
| **GC SERVICES LIMITED** | § | |
| **PARTNERSHIP,** | § | |
| | § | |
| *Defendant*. | | |

## REPORT AND RECOMMENDATION

Before the Court is Defendant GC Services Limited Partnership's ("Defendant") "Motion to Dismiss Plaintiff's Telly Sebastian Williams's ("Plaintiff") Second Amended Petition or in the Alternative Dismiss in Favor of Arbitration" ("Motion") (ECF No. 14), filed on September 7, 2023.[1]  Defendant moves to dismiss under Rules 12(b)(3) and 12(b)(6), and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*.  On October 19, 2023, Senior United States District Judge Frank Montalvo referred the motion to the undersigned for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 1(d) of Appendix C to the Local Rules.  (ECF No. 15).  For the following reasons, the Court **RECOMMENDS** that Defendant's Motion to Dismiss be **GRANTED IN PART** with respect to compelling arbitration.

## I.       BACKGROUND

### A.  Factual Background

Plaintiff, proceeding *pro se*, brings this lawsuit against Defendant for employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and the

---

[1] Defendant's Motion is unopposed, but the Court does not summarily rule on it because it is a dispositive motion.

Fair Labor Standards Act ("FLSA").  Pl.'s Second Am. Pet. 3–5, ECF No. 12.  Plaintiff is African

American.  *Id.* at 3.  Defendant is a call center incorporated in Texas with a principal place of

business in Texas.  *Id.* at 2.  In 2022, Defendant hired Plaintiff as a representative.  (ECF No. 14,

at 5).  As part of his employment, Plaintiff electronically signed the Mutual Agreement for Dispute

Resolution ("Arbitration Agreement" or "Agreement") on March 23, 2022.  (ECF No. 14-1, at 7).

The Agreement contained a clause providing all disputes that must be arbitrated, including

employment discrimination claims.  *Id.* at 4.  On or about May 3, 2022, Plaintiff was terminated

by the Defendant, and he alleges the following adverse employment actions by Defendant:

(1) Plaintiff was allegedly accused of altering his working hours for the period of April 4,
2022 through May 1, 2022.

(2) Plaintiff was allegedly harassed for taking a bathroom break during a training on or
about May 3, 2022.

(3) Plaintiff was allegedly asked to leave place of employment pending an investigation of
his discrimination claim to Defendant's Human Resources and was not asked to return.

(4) Plaintiff was released from his employment for job abandonment after six days of
Defendant commencing the investigation.  (ECF No. 12, Ex. A at 11–13).

**B.  Procedural Background**

Plaintiff filed a charge of discrimination against Defendant with the U.S. Equal

Employment Opportunity Commission ("EEOC"). [2]  (*See* ECF No. 12, at 7).  Plaintiff asserts

claims under Title VII and the FLSA.  Specifically, Plaintiff avers that his race was a motivating

factor in Defendant's decision to terminate his employment on or about May 3, 2022.  (ECF No

12, Ex. A).  On or about May 2, 2022, and May 3, 2022, Plaintiff alleges that the four work-related

_____

[2] It is unclear from the record when Plaintiff filed the charge of discrimination with the EEOC.

events supporting his claims (and outlined in the previous paragraph) took place.  On January 9, 2023, the EEOC issued Plaintiff a Notice of Right to Sue.  *Id.*  Plaintiff filed the instant case on March 24, 2022, in the 205th Judicial District Court, El Paso County, Texas.  Def.'s Notice of Removal 1, ECF No. 1.  On May 9, 2023, Plaintiff filed Plaintiff's First Amended Original Petition ("First Amended Complaint") (ECF No. 1-1).  Defendant removed the instant case to federal court on May 22, 2023. (ECF No. 1).  On May 30, 2023, Defendant moved to dismiss Plaintiff's claim with prejudice, or alternatively, moved to compel arbitration ("First Motion to Dismiss") (ECF No. 2).  The Court later granted Plaintiff leave to amend his complaint and denied Defendant's First Motion to Dismiss as moot.  (ECF Nos. 11, 13).  On August 24, 2023, Plaintiff filed his Second Amended Complaint (ECF No. 12).  Defendant, on September 7, 2023, filed the instant motion requesting that the Plaintiff's case be dismissed and, in the alternative, that arbitration be compelled pursuant to the Arbitration Agreement.  (ECF No. 14).

## II.   LEGAL STANDARD

As an initial matter, the Court notes that Defendant takes an inconsistent view of the relief it requests.  The Defendant asks the Court to make a dispositive determination on the merits and either (1) throw the Plaintiff's case out in toto or (2) whittle down the Plaintiff's claims and *then* compel arbitration on any surviving remnants of the case.  As will be demonstrated below, federal law completely disfavors any such approach, and there is a long line of authority strongly favoring arbitration when such an agreement exists, as in this case.  Further, case law strongly states that the pursuit of litigation in federal court on a case otherwise subject to arbitration can result in a party waiving their right to arbitration.  Thus, litigation on substantive matters in federal court and

arbitration are essentially mutually exclusive, and a party is required to decide at some point whether it stays on one track or the other.

In light of this contradictory relief requested by the Defendant, the Court will first examine whether this matter can be validly arbitrated, and whether the Defendant has waived its right to arbitration.

### A.  Waiver of Arbitration By A Party

The right to arbitration, pursuant to an arbitration agreement, is a waivable right.  *See Miller Brewing Co. v. Fort Worth Distributing Co., Inc. (FWDC)*, 781 F.2d 494, 497 (5th Cir. 1986).  "A party waives arbitration by seeking a decision on the merits before attempting to arbitrate" *Petrol. Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009).  The Fifth Circuit has disapproved of attempts to obtain a decision on the merits before moving for arbitration.  *See Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1158 (5th Cir. 1986) (affirming district court's denial of motion to compel arbitration where the defendant waited sixteen months after the plaintiff filed suit to move to compel arbitration and had previously filed motions for dismissal and summary judgment).  Moreover, the Fifth Circuit has stated to "hold otherwise would encourage litigants to delay moving to compel arbitration until they could ascertain 'how the case was going in federal district court.'" *In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010) (citation omitted). "[Judicial] waiver will be found when the party seeking arbitration *substantially invokes the judicial process …*" *Id.* at 588 (emphasis added).

For a party to invoke the judicial process, the "party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Id.* at 589 (quoting *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329

(5th Cir. 1999)).[3]   In the Fifth Circuit, there is no "bright-line rule ... for deciding whether a party

has waived its right to arbitration.  Rather, ... precedent establishes that '[t]he question of what

constitutes a waiver of the right of arbitration depends on the facts of each case." *Id.* (quoting

*Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 420 (5th Cir. 1985)) (alteration in original);

*see also Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004)

("Ultimately, however, the question of what constitutes a waiver of the right of arbitration depends

on the facts of each case.") (internal quotes omitted).  The Fifth Circuit has outlined a variety of

factors it has considered when applying a totality-of-circumstances test, including: (1) how much

pretrial activity related to the merits rather than arbitrability or jurisdiction; and (2) whether the

movant sought or opposed arbitration earlier in the case.  *See Sedco, Inc. v. Petroleos Mexicanos*

*Mexican Nat. Oil Co. (Pemex)*, 767 F.2d 1140, 1150 (5th Cir. 1985); *E.C. Ernst, Inc. v. Manhattan*

*Constr. Co.*, 551 F.2d 1026, 1040–41 (5th Cir. 1977).

### B.  Compelling Arbitration

Congress enacted the Federal Arbitration Act ("FAA") in 1925 "in response to widespread

judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333,

339 (2011).  Section 2 of the FAA provides, in relevant part:

> A written provision in any maritime transaction or a contract evidencing a
> transaction involving commerce to settle by arbitration a controversy thereafter
> arising out of such contract or transaction ... shall be valid, irrevocable, and
> enforceable, save upon such grounds as exist at law or in equity for the revocation
> of any contract.

9 U.S.C. § 2.  The Supreme Court has described this provision as reflecting both a "liberal federal

policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract."

---

[3] One court found that removal to federal court *alone,* prior to moving to compel arbitration, is sufficient to
establish waiver.  *See Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir.
1995).

*AT&T Mobility*, 563 U.S. at 339.  "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id.* (citations omitted).  Other than those for workers engaged in transportation, employment contracts are covered by the FAA.  *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

Parties may agree to have an arbitrator decide not only the merits of a particular dispute but also gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010).  An "agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center*, 561 U.S. at 70.  Thus, "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

1.  <u>Two-Step Test</u>

The Fifth Circuit applies a two-step analysis to determine whether parties should be compelled to arbitrate a dispute.

> The first is contract formation—whether the parties entered into any arbitration agreement at all.  The second involves contract interpretation to determine whether this claim is covered by the arbitration agreement.  Ordinarily both steps are questions for the court.  But where the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes.

*Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (citations omitted).  In the latter case, "the court asks only whether there is a valid delegation clause.  If there is, then the arbitrator decides whether the claim is arbitrable." *In re Willis*, 944 F.3d 577, 579 (5th Cir. 2019).

"If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." *Kubala*, 830 F.3d at 202.

    2.  <u>Contract Defenses</u>

Applying the *Kubala* test, the Court must determine whether the parties entered into an arbitration agreement. 830 F.3d at 201. This initial question is for the court. *Id.*; *see also 20/20 Commc'ns, Inc. v. Crawford*, 930 F.3d 715, 718 (5th Cir. 2019) ("[I]f parties dispute whether they in fact ever agreed to arbitrate at all, such questions of contract formation are considered 'gateway' issues that presumptively must be decided by courts, not arbitrators.") (quoting *Rent-A-Center*, 561 U.S. at 68–69). To determine whether there is a valid agreement to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). The parties' written agreement provides that Texas law should govern their agreement. (ECF No 14-1, at 5) Under Texas law, a binding contract requires: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *In re Capco Energy, Inc.*, 669 F.3d 274, 279–80 (5th Cir. 2012).

Like other contracts, arbitration agreements may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability. *Rent-A-Center*, 561 U.S. at 66. The party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

3. <u>Contract Interpretation to Determine Whether Plaintiff's Claims are Covered By The</u>
   <u>Arbitration Agreement</u>

Next, the Court must determine whether the claims in this lawsuit fall within the Arbitration
Agreement.   Once the court determines there is a valid arbitration agreement, the FAA establishes
a strong federal policy in favor of enforcing the arbitration agreement.   *Howsam v. Dean Witter*
*Reynolds, Inc.*, 537 U.S. 79, 83 (2002).   In ruling on a motion to compel arbitration, the court
therefore should resolve any doubts about the arbitrability of a claim in favor of arbitration.   *Tittle*
*v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (citing *Fleetword Enters, Inc. v. Gaskamp*, 280
F.3d 1069, 1073 (5th Cir. 2002)).   While this second question is usually a question for the court,
if the arbitration agreement contains a valid delegation clause, the court must submit the question
of whether the claims fall within the arbitration agreement to the arbitrator.   *Kubala*, 830 F.3d at
202.   In such a situation, the court determines whether the agreement contains a valid delegation
clause, that is, if it "evinces an intent to have the arbitrator decide whether a given claim must be
arbitrated." *Id.*   In making this analysis, the court does "not assume that the parties agreed to
arbitrate arbitrability '[u]nless the parties clearly and unmistakably provide otherwise.'" *Petrofac,*
*Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (second
alteration in original) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649
(1986)).   Moreover, when determining the intent of parties to agree to arbitrate arbitrability, "a
contract need not contain an express delegation clause to meet this [clear and unmistakable]
standard." *Clearwater Benefits, LLC v. Planstin Admin., Inc.*, No. A-22-CV-802-RP, 2023 WL
130415, at *5 (W.D. Tex. Jan. 9, 2023).   If a court concludes that the parties to an arbitration
agreement clearly and unmistakably delegated arbitrability, it "must refer the claim to

arbitration[;]" however, if a court concludes that the parties did not, it "must perform the ordinary arbitrability analysis." *Kubala*, 830 F.3d at 203.

## III.   DISCUSSION

In the instant case, Defendant, moves "to dismiss Plaintiff's claims in its entirety under Rule 12(b)(6), or in the alternative, dismiss [Plaintiff's Second Amended Complaint] entirely in favor of arbitration under Rule 12(b)(3)." (ECF No 14, at 1).  The Defendant invokes the judicial process in asking this Court to dismiss any of Plaintiff's non-cognizable claims and then compel arbitration on any remaining claims.  While the Defendant has not previously filed any affirmative claims or dispositive motions, it has also not previously sought or opposed arbitration.  Therefore, though arbitration is a contractual right which can be waived, the facts of this case demonstrate the Defendant has not waived arbitration since Defendant has not engaged in an overt act to substantially invoke the judicial process.  However, the Court declines Defendant's invitation to address the merits of Plaintiff's claims and then refer any remaining claims to arbitration.  The question in front of the Court is whether Plaintiff's claims should be compelled to arbitration.

### A.   Defendant Has Met Its Burden to Show the Existence of a Valid Agreement

Plaintiff signed a Mutual Agreement for Dispute Resolution ("Arbitration Agreement" or "Agreement") on March 23, 2022.  (ECF No. 14, at 5).  The Agreement was countersigned by Defendant on April 1, 2022.  *Id.* at 6.   In fact, Defendants provided the Arbitration Agreement signed by Plaintiff as an exhibit to their Motion, which contains, in relevant part:

> [A]ll disputes, claims, or complaints that involve legally protected rights … arising out of and/or directly or indirectly related to your application for employment with the Company, and/or your employment with the Company, and/or the terms and conditions of your employment with the Company, and/or the termination of your employment with the Company (collectively "Covered Claims") are subject to arbitration pursuant to the terms of this Agreement and will be resolved by arbitration and NOT by a court or jury.  Covered Claims include, but are not limited to, any dispute about the formation, scope, interpretation, applicability, validity,

> existence, enforcement, or extent of arbitrability of or under this Agreement, claims relating to breach of contract, tort claims, wrongful discharge claims, *discrimination and/or harassment claims, retaliation claims, ... claims under the Fair Labor Standards Act ("FLSA"), Title VII of the Civil Rights Act of 1964 ("Title VII"),* ... and any other claim under any federal, state, or local statute, constitution, regulation, rule, ordinance, or common law.

(ECF No. 14-1, at 4) (emphasis added). Plaintiff concedes that he entered into the Arbitration Agreement and that he agreed to arbitrate all disputes arising under the agreement. (ECF No. 4, at 8). Moreover, Plaintiff agreed to be "bound" by the terms and conditions of the agreement. (ECF 14-1, at 7).[4] The parties' written agreement stipulated Texas law should govern their agreement in this case. The Texas Supreme Court has held that "[m]utual promises to submit all employment disputes to arbitration [are] sufficient consideration for such agreements." *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 424 (2010). "Moreover, an arbitration clause is not illusory unless one party can avoid its promise to arbitrate by amending the provision or terminating it altogether." *Id.; see also Nelson v. Watch House Int'l, L.L.C.*, 815 F.3d 190, 193 (5th Cir. 2016) (holding that an agreement is illusory where one party had the unrestrained unilateral authority to terminate its obligation to arbitrate). The Arbitration Agreement is supported by valid consideration including Defendant's agreement to cover certain costs associated with the arbitration. (ECF 14-1, at 4, 6). In reviewing the Arbitration Agreement, there is no indication of a party having unilateral authority to amend the agreement to terminate its obligation to arbitrate. Therefore, the Court finds that the parties entered into an enforceable arbitration agreement. *See Doe v. Virginia Coll., LLC*, 2019 WL 1131424, at *1 (W.D. Tex. Mar. 12, 2019) (finding that parties entered into an arbitration agreement where plaintiff did not dispute that she entered into the arbitration agreement).

---

[4] Notably, Plaintiff also states in his Response to Defendant's First Motion to Dismiss that he "would have rather arbitrated this issue in lieu of filing a Complaint with the Court." (ECF No. 4 at 8).

**B.  Defendant's Arbitration Agreement Contains a Valid Delegation Clause**

Defendant argues that Plaintiff should be compelled to arbitrate any of his Title VII and FLSA "legally cognizable claims" in this lawsuit because they are governed by the "plain terms of the arbitration clause" contained in the Agreement.  (ECF No. 14, at 13-14).  Plaintiff does not dispute this allegation.  Here, the Arbitration Agreement contains a provision that delegates to the arbitrator "any dispute about the formation, scope, interpretation, applicability, validity, existence, enforcement, or extent of arbitrability of or under this Agreement …." (ECF No. 14-1, ¶ 1(a)). This clause is similar to the clause in *Kubala*:

> The arbitrator shall have the sole authority to rule on his/her own jurisdiction, including any challenges or objections with respect to the existence, applicability, scope, enforceability, construction, validity and interpretation of this Policy and any agreement to arbitrate a Covered Dispute.

*Kubala*, 830 F.3d at 204.

The clause in this case is a valid and enforceable delegation clause.  Just as in *Kubala*, where the court held that the clause was a valid delegation clause and thus indicated "the parties agreed that the arbitrator and not the court should be the decision maker on whether a given claim is arbitrable," here, it is also the arbitrator who will decide if the Agreement covers all the asserted claims.  *Kubala*, 830 F.3d at 204.  Accordingly, the Court does not determine whether Plaintiff's claims in this lawsuit fall within the Arbitration Agreement, including a determination as to whether all administrative remedies have been exhausted by Plaintiff.

In conclusion, the Court finds that while Defendant has invoked judicial process, it has not done so to the extent that it waived its right to arbitration.  Moreover, Defendant has submitted evidence of a valid arbitration agreement.  Plaintiff and Defendant both signed the agreement. Plaintiff does not dispute the Parties entered into an enforceable contract, as he does not oppose arbitration.  Finally, since the Arbitration Agreement contains a valid delegation clause, the court

must submit the question whether Plaintiff's claims fall squarely within the claims covered by the Agreement to the arbitrator. Therefore, it is unnecessary for the Court to assess the merits of Plaintiff's claims pursuant to Rule 12(b)(3) and 12(b)(6) and recommends that Defendant's Motion be **GRANTED IN PART** with respect to compelling arbitration.

## IV.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's "Motion to Dismiss Plaintiff's Second Amended Petition or in the Alternative Dismiss in Favor of Arbitration" (ECF No. 14) be **GRANTED IN PART** with respect to compelling arbitration.

**SIGNED** and **ENTERED** this __17th__ day of November 2023.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE

## NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**